# EXHIBIT "A"

| | |
|---|---|
| REAL ESTATE SECURED<br>VARIABLE RATE AGREEMENT AND DISCLOSURE<br>OPEN END<br>COMMANDCREDIT PLUS® - HOME EQUITY LINE OF CREDIT | Acct. No. - ____ ____ 3434<br>Borrower: MICHAEL A MIETUS<br>Co-Borrower: LINDA L MIETUS |

## AGREEMENT AND DISCLOSURE STATEMENT

This Agreement and Disclosure Statement (this "Agreement") states the terms of your CommandCredit Plus Home Equity Line of Credit. By signing below, you agree to all the terms of this Agreement. Only those boxes that are checked apply. The date of this Agreement is 05/23/2005.

**Definitions.** "You" and "your" mean you, the Borrower, and all other persons signing this Agreement as Co-borrowers. "We", "us", "our" and "TCF" mean TCF National Bank, 800 Burr Ridge Parkway, Burr Ridge, Illinois 60521 and its successors and assigns. "Successor" means a legal entity or person that by law succeeds to the legal rights and obligations of TCF. "Assigns" means an entity or person to whom TCF assigns its rights and obligations under this Agreement. "Account" means your CommandCredit Plus Home Equity Line of Credit. "Account Balance" means the sum of the unpaid Principal Balance, Finance Charges, Late Charges and Other Charges except Other Charges we have added to the Principal Balance. "Principal Balance" means the unpaid amount of Loan Advances on your Account, and any Other Charges we add to your Principal Balance. "Check" means the CommandCredit Plus Checks provided to you. "CommandLine® Card" means the card provided to you to access your line of credit. "Loan Advance" means amounts we advance to you on your Account when you make a Check, use your CommandLine Card, request a Fixed Rate Conversion or any other loan request acceptable to us, Closing Costs not paid in cash, and charges to protect our interests as described in the section on page 5 labeled "Our Other Rights". "Fixed Rate Conversion" means a request by you to convert the Annual Percentage Rate and payment schedule for all or a portion of the outstanding Principal Balance on your Account in accordance with the terms of this Agreement in the section on page 3 labeled "Fixed Rate Conversion Features". "Finance Charge" means the interest we will charge you, figured according to the terms of this Agreement, the processing fees and conversion fees described in the "Closing Costs" and "Fixed Rate Conversion Feature" sections respectively as Finance Charges. "Closing Costs" means a cost described on page 3 in the section labeled "Closing Costs". "Other Charges" means charges you owe us under this Agreement for returned payment charges, overline charges, annual maintenance fees, TCF Command Protection Line charges, and check copy charges. We may add Other Charges to your Principal Balance.

**Your Promise To Pay.** You promise to pay to us your Account Balance according to the terms of this Agreement. You promise to pay to us a Finance Charge calculated as described below in the section labeled "Finance Charge". You promise to pay us a monthly payment as described in the section on page 2 labeled "Payments". You promise to pay us your entire unpaid Account Balance by 05/27/2035, which is the final due date, in a single payment. We may also direct you to make any payment to someone else (this means this Agreement is payable to us or "our order"). We will begin charging interest on 05/27/2005 ("Interest Start Date").

**Finance Charge.** The Finance Charge you will pay us is calculated according to this section and is figured at the end of every monthly billing cycle. The monthly billing cycle runs from and includes the first day of a month to and including the last day of that month. We figure the Finance Charge on your Account for each day of the monthly billing cycle by multiplying the Daily Periodic Rate in effect for the month times the Principal Balance for your Account as of the end of each day. The Principal Balance of your Account for each day is figured by taking the Principal Balance of your Account at the beginning of each day, adding any new Loan Advances and any Other Charges we have added to your Principal Balance that day, and subtracting any reduction in the Principal Balance due to the application of payments or credits to your Account that occurred that day. The Daily Periodic Rate for each day is figured by dividing the Annual Percentage Rate described below under the section labeled "Variable Interest Rate" for that day by 365 (or 366, in any leap year). We figure the Finance Charge for the monthly billing cycle by adding the Finance Charges for each day in the monthly billing cycle. You pay no Finance Charge on unpaid Finance Charges or Other Charges which are not added to your Principal Balance. The Finance Charge for both Loan Advances and any Other Charges we add to your Principal Balance begins to accrue the day they are posted to your Account. Loan Advances are posted to your Account the date we receive them. Other Charges are posted to your Account on the date we add them to your Principal Balance. No time period exists within which any credit extended may be repaid without incurring a Finance Charge. In addition, the processing fee and conversion fees are a Finance Charge and are calculated as stated in the "Closing Costs" and the "Fixed Rate Conversion Feature" sections respectively.

**Variable Interest Rate.** The interest rate on your Account is variable and can change monthly during the term of this Agreement. Your interest rate is referred to as an Annual Percentage Rate. The Annual Percentage Rate is the cost of your credit as a yearly rate. The changes in the Annual Percentage Rate are based on changes to the Index Rate. The Index Rate is the highest U.S. prime rate published daily in *The Wall Street Journal* (currently under the label "Money Rates"). The highest published Index Rate each calendar month is the Index Rate that Applies to all days of each calendar month. If the published Index Rate changes during the calendar month, we will change your Annual Percentage Rate on the last calendar day of the month based on the highest published Index Rate during each month plus ____ the Margin described below (except as limited by the section below labeled "Minimum and Maximum Annual Percentage Rate").

On and after 05/27/2005 and through the date you pay your Account in full and this Agreement is canceled, your Annual Percentage Rate will be the published Index Rate plus 0.000 percentage points (the "Margin"). The Annual Percentage Rate will change monthly based on changes in the published Index Rate as discussed above. The Index Rate published today is 6.000 % per year. Therefore, your beginning **ANNUAL PERCENTAGE RATE** for your Account (unless the Index Rate changes before the Interest Start Date) is 6.000 % per year which is equivalent to a Daily Periodic Rate of .01644 %. The Daily Periodic Rate is figured by dividing the Annual Percentage Rate for each day by 365 (or 366, in any leap year).

If the Annual Percentage Rate increases or decreases, the Daily Periodic Rate will also increase or decrease. Any increase in the Annual Percentage Rate may cause larger Minimum Payments. The reverse will happen if the Annual Percentage Rate declines. If the Index Rate becomes unavailable, we will pick a new index rate and margin, and send you notice of the new index rate and margin. The new index rate will be the Index Rate and the new margin will be the Margin. The new index rate will have a historical movement substantially similar to the Index Rate, and the new index rate and margin will result in an Annual Percentage Rate similar to the Annual Percentage Rate in effect at the time the Index Rate became unavailable. The Index Rate may not be the lowest or best rate offered by us or other lenders. The Annual Percentage Rate includes only interest and not other costs.

**Minimum and Maximum Annual Percentage Rate.** Your **ANNUAL PERCENTAGE RATE** will never be less than 5.490 %, no matter how much the Index Rate may decline. Your **ANNUAL PERCENTAGE RATE** will not exceed 19.000 %.

**Rate Discount for TCF Checking or Deposit Account.**
[x] The Annual Percentage Rate on this Agreement as described above has been reduced by one-quarter of one percentage point (.25%) from what it otherwise would have been because you have a TCF Checking or Savings Account ("TCF Account"). If your TCF Account is closed, your Annual Percentage Rate will be increased as of the date of TCF Account closure by one-quarter of one percentage point (.25%). The interest rate increase will be determined by adjusting the Margin we add to or subtract from the Index Rate, as described above, by one-quarter of one percentage point (.25%) on the date of TCF Account closure and for all subsequent Annual Percentage Rate changes.

**TCF's Right to Cancel the Agreement:** You have provided us with certain information regarding the real property securing this Agreement. TCF may cancel this Agreement for fraud or material misrepresentation as described in the section titled "Possible Actions" if it discovers any of the following types of information provided to us by you in the application or on the Affidavit of Borrower or Owner is inaccurate, fraudulent or misleading in any manner, including, but not limited to omissions, fraudulent statements and errors. This includes information regarding: the ownership of any real property securing this Agreement; any mortgages, liens or other encumbrances on any real property securing this Agreement; non-payment of any items which could create liens or other encumbrances on any real property securing this Agreement; the legal description of any real property securing this Agreement; and any contracts or other agreements affecting any real property securing this Agreement.

NOTICE TO BORROWER: SEE PAGES 2, 3, 4, 5, 6, 7, 8 AND 9 OF THIS AGREEMENT FOR IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS AND OTHER CONTRACT INFORMATION. BY SIGNING BELOW, YOU AGREE THAT PAGES 2, 3, 4, 5, 6, 7, 8 AND 9 OF THIS AGREEMENT ARE PART OF YOUR AGREEMENT WITH US AND THAT YOU RECEIVED A COMPLETED COPY OF ALL 9 PAGES OF THIS AGREEMENT. BY SIGNING BELOW, YOU ALSO STATE THAT YOU HAVE READ AND AGREED TO ALL THE TERMS OF THIS AGREEMENT, INCLUDING THE TERMS ON PAGES 2, 3, 4, 5, 6, 7, 8 AND 9.

_____    _____
Borrower  MICHAEL A MIETUS              Co-Borrower  LINDA L MIETUS

You agree that this Agreement is subject to arbitration as set forth in a separate arbitration agreement. You also acknowledge you received and agreed to the separate arbitration agreement on this date.    _____ Initials    _____ Initials

## SECURITY

To protect us if you default under this Agreement, or any change, extension or renewal of this Agreement:

[X] **Mortgage.** You give us a mortgage dated the same date as this Agreement. The Mortgage will be in the amount of your credit limit, and will cover the real property located at:

    4327 HIRSCHBERG SCHILLER PARK IL 60176-1417

We will not release the mortgage until you have paid us everything you owe us under this Agreement and have canceled this Agreement. The mortgage contains additional terms regarding your and our duties and obligations.

[ ] **Security Agreement.** You give us a security interest in the following property ("collateral"):

This security agreement does not apply to personal property that is your principal dwelling if we fail to provide any required notice of right to rescind.

**Accessions and Proceeds.** To protect us if you default under this Agreement, and any changes, extensions, and renewals of this Agreement, you also give us a security interest in any "accessions" to and "proceeds" of any collateral described above and any substitutions of the collateral and all proceeds of such property which will all be included in the term "collateral". "Accessions" generally means any goods installed in or attached to the collateral. "Proceeds" generally means any money or property due to you from the loss, destruction or sale of collateral. Accessions and Proceeds are defined in Article 9 of the Uniform Commercial Code.

**Ownership of the Collateral.** You represent that you and any Collateral Owner signing this Agreement have full ownership of all the collateral. You represent that no one else has an interest in the collateral, including a lien, other than an acceptable interest as to which we have been advised in writing in our inspection of title to the collateral (for example, a first-lien on your car that is already noted on the title). You agree not to sell or give anyone else an interest in any of the collateral that is personal property or give anybody else an interest in it without written permission from us. You will keep the collateral free from all other claims (such as taxes and liens). You agree to assist us and sign any documents necessary to perfect our security interest in the collateral (such as ensuring a financing statement or certificate of title documents are filed on the collateral).

**Care of the Collateral.** You will:
1. Keep all the collateral in good repair and working order;
2. Replace broken and worn parts;
3. Allow us to inspect the collateral as we wish; and
4. Notify us in writing immediately of any loss or damage to the collateral.

**Insurance.** You will keep the collateral insured against:
1. Fire (including extended coverage);
2. Theft and collision (for motor vehicles); and
3. Any other risks we name.

You may buy the insurance from anyone you want, but the insurance company and the amount of the insurance must be acceptable to us. You will have the insurance company name us in the policy as a secured party, and you will give us a copy of the policy. You will instruct each issuer of an insurance policy to pay any claims directly to us and to notify us in writing at least 30 days before ending coverage. You assign any insurance payments to us as additional security.

Notice: If you do not provide us with evidence of all the insurance coverage required by your Agreement with us promptly after we ask for this evidence, we may purchase insurance at your expense to protect our interest in the collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by this Agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your Principal Balance. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Our Right to Take Action.** If you do not:
1. Take care of the collateral;
2. Keep the collateral insured as we ask;
3. Make sure that necessary financing statements or certificate of title documents are filed; or
4. Fulfill any other promise you have made in this Agreement,

then we may (if we choose) take the necessary steps to protect our interest in the collateral. For example, we may pay taxes, insure the collateral, file financing statements, or make repairs.

**Location of Property.** You will not keep personal property collateral in any county or state unless a financing statement has been filed there showing us as the secured party, if one is required to be filed there to perfect our security interest. You will not remove personal property collateral from the state where you currently live without our written permission. If there is a certificate of title showing title to any collateral, you will file any amendment or other documentation required to protect our security interest.

**Special Rules for Securities.** If any of the collateral consists of stocks, bonds or other types of securities:
1. You will endorse those securities at our request so that we can transfer them. If we ask you to, you will also deliver to us anything that you receive from the issuer of those securities. For example, you will deliver any money, notices and additional securities that you receive from the issuer because you own the securities. Whatever you deliver to us will be collateral subject to this Agreement.
2. We may notify the issuers of those securities of our security interest. We may require the issuers to make any payments to us directly, and we may sue the issuers if they do not pay as required.
3. If your securities are issued by or held by another party, such as your broker, you will obtain from such party a signed control agreement we may require to perfect our security interest in the collateral.

## ADDITIONAL TERMS OF YOUR COMMANDCREDIT PLUS® - HOME EQUITY LINE OF CREDIT

**Payments.** At the end of every monthly billing cycle, we will calculate your Minimum Payment, which will be due by the 15th of the following month. The "Minimum Payment" is equal to the Finance Charge for the monthly billing cycle, or $50.00, whichever is greater. In addition, you promise to pay all Late Charges, past due amounts and unpaid Other Charges and any other amount which exceeds your credit limit described in the section labeled "Draw Period and Credit Limit". If the Account Balance is less than the Minimum Payment calculated above, then your Minimum Payment for that month is equal to your Account Balance. The Minimum Payment may not reduce the Principal Balance that is outstanding on your Account. On the final due date, you will be required to pay the entire outstanding Account Balance. This payment may be substantially higher than your monthly payment and is sometimes referred to as a "balloon" payment. All payments must be made at the address on your statement or payment coupon, or at any other address that we give you written notice of ("Payment Address"). All payments must be made in U.S. Dollars. Payments made at or delivered to any address other than the Payment Address, will not be considered made until received at the Payment Address. You may prepay this Agreement at any time without penalty.

**Application of Payments.** Any payment you make to us may first be applied to any billed and unpaid Late Charges, then to any billed and unpaid TCF Command Protection Line charges, then to any billed and unpaid Returned Payment Charges, then to any billed and unpaid Other Charges you owe, then to any billed and unpaid Finance Charges, and then to the remainder of your Account Balance. To the extent your payments reduce your Principal Balance, that amount becomes available to you for Loan Advances (provided your Principal Balance does not exceed your Credit Limit). Although we apply your payments to your Account as of the date we receive them at the Payment Address, the credit available to you because of your payments will be final only on the date the funds are collected by us. All credits for payments on your Account are subject to final payment by the institution on which the payment is drawn.

**Closing Costs.** To open an Account, you promise to pay a processing fee of $350 (**Finance Charge**). We will defer collection of this fee at the time you open your Account. You agree you will pay this fee to us if your Account is terminated before three years from the Interest Start Date. However, if your Account is closed due to a refinance of this Agreement with us or due to the voluntary sale of your house to someone else, the processing fee will be waived.

You promise to pay the following closing costs on the date of this Agreement (if not paid in cash, we may add the costs to your Principal Balance):

**Draw Period and Credit Limit.** We will make Loan Advances to you according to the terms of this Agreement until the final due date shown on page 1 in the section labeled "Your Promise To Pay" (the "Draw Period") as long as you do not exceed your credit limit. The credit limit on your Account is $213,000.00. You agree not to write any Check, use your CommandLine Card, or make any other loan request that would cause your Principal Balance to exceed your credit limit. We do not have to pay any Check, or authorize a CommandLine Card transaction or make a Loan Advance that would cause your Principal Balance to exceed your credit limit, but if we do, you promise to pay us the excess as soon as we ask you to. You will owe an overline fee of $20 for each monthly billing cycle in which you exceed or attempt to, but do not exceed, your Credit Limit.

☐ If this box is checked the following applies:

You agree that the mortgage you give us on the property described on page 2 of this Agreement in the section labeled "Mortgage" will be for _____ ("Original Mortgage Amount") which is greater than the initial credit limit stated above. This means that any amount you pay to third parties that is based on the Original Mortgage Amount (such as for title insurance) will be greater than if the mortgage was only for the initial credit limit. From time to time after the date of this Agreement, we will review your Account and may decide to increase your credit limit, but will never increase it to an amount that would exceed the Original Mortgage Amount or the then current mortgage amount if you and we have agreed to modify the mortgage amount. In addition, we may decrease your credit limit, but only for the reasons stated in the section labeled "Possible Actions" on page 4 of this Agreement. We will send you notice of the increased or decreased amount. Except for the section labeled "Mortgage" on page 2 of this Agreement, the word "credit limit", when used in this Agreement, means your initial credit limit or any increased or decreased credit limit in effect at the time. In the section labeled "Mortgage", the word "credit limit" means the "Original Mortgage Amount".

**Fixed Rate Conversion Feature.** At any time before the last 12 months of the Draw Period, you may convert the payment schedule and variable Annual Percentage Rate for any amount of Principal Balance up to the current Principal Balance (not including any previously converted Principal Balance) to a fixed Annual Percentage Rate and fully amortizing payment schedule, subject to the following terms and conditions:
- The minimum amount of Principal Balance you may request to convert is $5,000.00.
- You may request up to 3 Fixed Rate Conversions per year with no more than 3 Fixed Rate Conversions existing at any one time.
- The conversion fee for each Fixed Rate Conversion is $50 (**FINANCE CHARGE**).
- The unpaid Principal Balances of all outstanding Fixed Rate Conversions will reduce the amount available for other Loan Advances by the same amount. As you repay the Principal Balance on each Fixed Rate Conversion, the same amounts will once again be made available for other Loan Advances (provided your Principal Balance does not exceed your credit limit). Although we apply your payments to your Account as of the date we receive them at the Payment Address, the credit available to you because of your payments will be final only on the date the funds are collected by us. All credits for payments on your Account are subject to final payment by the institution on which the payment is drawn.
- Each Fixed Rate Conversion is a separate event. You cannot add an additional amount of Principal Balance to a Fixed Rate Conversion after the Fixed Rate Conversion is established.
- The fixed Annual Percentage Rate for each Fixed Rate Conversion will be determined by adding a margin to the Index Rate in effect on the date the Fixed Rate Conversion is requested. The margin shall be determined by us in our sole discretion. The Index Rate published today is 6.000 % per year. Therefore, if you were to request a Fixed Rate Conversion today and obtained a Fixed Rate Conversion with a margin of 8 percentage points, the fixed **"ANNUAL PERCENTAGE RATE"** on the Fixed Rate Conversion would be 14.000 % which is equivalent to a Daily Periodic Rate of .038356 %. The Daily Periodic Rate is figured by dividing the Annual Percentage Rate for each day by 365 (366, in any leap year). The **"ANNUAL PERCENTAGE RATE"** on any Fixed Rate Conversion will never be more than 19.000 %. The Annual Percentage Rate does not include charges other than interest. You can call your lender to find out the current fixed Annual Percentage Rate.
- Each Fixed Rate Conversion will be fully amortizing and have its own minimum monthly payment amount. The minimum monthly payment amount for each Fixed Rate Conversion will be the amount of principal plus interest sufficient to repay each Fixed Rate Conversion within a term you select in equal, fully amortizing monthly payments ("Fixed Rate Conversion Minimum Monthly Payment"). The term may not be less than 12 months or more than the then remaining term to the final due date of this Agreement shown on page 1 in the section labeled "Your Promise to Pay". The payment due date (for the Fixed Rate Conversion Minimum Monthly Payment) will be the same as the due date for the Minimum Payment. If you make early or late payments, the Fixed Rate Conversion Minimum Monthly Payment may be more or less than enough to fully repay the Fixed Rate Conversion by the end of the selected term because we continue to accrue interest on unpaid principal for each day any unpaid principal remains outstanding. The last Fixed Rate Conversion Minimum Monthly Payment amount will be adjusted up or down to make up for any difference due to early or late payment.
- The Finance Charge you will pay us for each monthly billing cycle is calculated separately for each Fixed Rate Conversion and for the Principal Balance which has not been converted by a Fixed Rate Conversion. Each Finance Charge is calculated as explained in the section on page 1 labeled "Finance Charge" except that the Daily Periodic Rate and Annual Percentage Rate described in that section will only be applied to the Principal Balance which has not been converted to any Fixed Rate Conversion and the Daily Periodic Rate and Annual Percentage Rate for each Fixed Rate Conversion will be the Daily Periodic Rate and Annual Percentage Rate described above in this section. The sum of the results of these calculations are the total Finance Charge due for each monthly billing cycle.
- The Total Minimum Payment" due on your Account each month will be the sum of the Fixed Rate Conversion Minimum Monthly Payment plus the Minimum Payment. Making the Minimum Payments and the Fixed Rate Conversion Minimum Monthly Payments may not fully repay the Principal Balance that is outstanding on your Account. On the final due date, you will be required to pay the entire outstanding Account Balance. This payment may be substantially higher than the total payment due on your Account each month and is sometimes referred to as a "balloon" payment.

- Each Total Minimum Payment made to us on your Account may first be applied to any billed and unpaid Late Charges, then to any billed and unpaid TCF Command Protection Line charges, then to any billed and unpaid Returned Payment Charges, then to any other billed and unpaid Other Charges you owe, then to each Fixed Rate Conversion Minimum Monthly Payment (applied first to the Finance Charge for the Fixed Rate Conversion and then to principal reduction) beginning with the oldest Fixed Rate Conversion outstanding, then to any billed and unpaid Finance Charges on the Principal Balance which has not been converted to a Fixed Rate Conversion, then to the principal each Fixed Rate Conversion beginning with the oldest Fixed Rate Conversion outstanding, then to the remainder of your Account Balance.
- You may request and establish a Fixed Rate Conversion by calling or visiting your lender. A full disclosure of all the terms of the Fixed Rate Conversion will be provided to you at the time the Fixed Rate Conversion is established.
- Except as modified, amended and changed by this Fixed Rate Conversion section, all the terms of the Agreement apply to Fixed Rate Conversion.

**Loan Advances.** You can use your Account to get a Loan Advance by writing a Check or using your CommandLine Card. Each Loan Advance will be charged against your Account. Transactions with your CommandLine Card are subject to the following daily limits: (1) a maximum of 10 transactions per day; (2) a maximum of $10,000 or your available credit limit whichever is less; and (3) a maximum of $500 or your available credit limit whichever is less at automated teller machines ("ATMs") (certain ATMs may not allow withdrawals of up to $500 a day). We may, at our option, authorize and pay any CommandLine Card transaction which exceeds these limits and retain the right to refuse any other CommandLine Card transactions which exceed these limits in the future. Each of you may sign Checks and use the CommandLine Card. You are each fully responsible for Loan Advances even if only one of you signs a Check or uses the CommandLine Card. Loan Advances of any type may not be used to make payment on your Account, including, but not limited to, a payment for any Fixed Rate Conversion. We will not return your Checks to you. If you want copies of any Checks, you will have to pay a fee of $5.00 for each copy. TCF does not charge an access fee for CommandLine Card transactions at TCF Express Teller^sm ATMs. A TCF Express Teller ATM is identified by the name TCF on it. Access or other transaction fees may be imposed by third parties for CommandLine Card transactions at any other location or facility.

**Liability for Unauthorized CommandLine Card Use.** You may be liable for the unauthorized use of your CommandLine Card. You will not be liable for the unauthorized use that occurs after you notify TCF, either orally or in writing at Customer Service, Mail Code 002-01-B, 101 E 5th Street, Suite 101, St. Paul, MN 55101 or by calling (651) 228-8014 or 1-800-950-7332.

**Late and Returned Payment Charges.** If we do not receive the required Total Payment, if any, in full on or before the 10th day after the due date shown on your monthly statement at the Payment Address, we will charge you and you promise to pay a late charge equal to 5% of the scheduled Total Payment amount or $15, whichever is more. If the 10th day is a Saturday, Sunday or Legal Holiday, we will not charge you a late charge if we receive the required Minimum Payment in full on the next day that is not a Saturday, Sunday or Legal Holiday. We apply payments in the order in which they are due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. We will not charge you an additional late charge on past due amounts from previous billing cycles. We will charge you and you promise to pay $25 for each check payment you give us, automatic payment withdrawal request or other payment instrument that is returned unpaid.

**Notice Regarding TCF Command Protection Line Provision Purchases.** If you purchase the TCF Command Protection Line provision, you understand that we or an affiliate of ours may receive something of value from the purchase.

**Annual Maintenance Fee.** You promise to pay us each year, in advance, a non-refundable annual maintenance fee of $50.00 for your participation in the CommandCredit Plus Home Equity Line of Credit program. You promise to pay this fee whether or not you use the Account at any time during the year. The maintenance fee due for your first year in the program will be billed with your first monthly statement. The annual maintenance fee will be billed each year thereafter.

**Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges for your Account.

**Monthly Statements.** We will send you a statement each month you owe us more than $1 or we owe you more than $1, or in which a Finance Charge is imposed. The statement will show information about your Account, including the Total Payment and when it is due.

**Financial Information.** Whenever we ask, you agree to furnish us with current information about the value of any property you have given us as security. You agree that we may obtain and use credit information about you from others as described in the loan application. You agree that we may report information about your credit to others at any time. See TCF's Privacy Policy for information on your right to direct us not to share certain information.

**Other Promises.** You will:

1. Provide us with financing statements at our request;
2. Assist us and do whatever is necessary to perfect any security interest in the collateral or real estate or other property securing this Agreement; and
3. Make sure our security interest is properly shown on the certificate of title, if the collateral includes a motor vehicle or other property represented by a certificate of title.
4. Notify us immediately in writing if you change your address; and
5. Not use the collateral or real estate securing this Agreement for any unlawful purpose.

**Possible Actions.** We can terminate your Account and require you to immediately pay us the entire outstanding balance in one payment (called "acceleration") if:
- You engage in fraud or material misrepresentation in connection with the Account.
- You do not meet the repayment terms.
- Your action or inaction adversely affects the property that secures your Account or our rights in the property.

We can refuse to make additional extensions of credit or we can reduce your credit limit during any period in which:
- The value of the dwelling securing the Account declines significantly below its appraised value for purposes of the Account.
- We reasonably believe you will not be able to meet the repayment requirements due to a material change in your financial circumstances.
- You are in default of a material obligation in this Agreement.
- Government action prevents us from imposing the Annual Percentage Rate provided for, or impairs our mortgage interest such that the value of the mortgage interest is less than 120 percent of the credit limit.
- A regulatory agency has notified us that continued advances would constitute an unsafe and unsound practice.
- The maximum Annual Percentage Rate is reached.

If the Rate Discount for TCF Checking or Deposit Account box on page 1 is checked, your annual interest rate will be increased by one-quarter of one percent (.25%) if the TCF Account is closed as provided in that section.

**Your Additional Obligations.** You agree that you will comply with all provisions of any Mortgage or the Security Agreement section of this Agreement given to us to secure your Account. You agree that you will comply with the terms of any other agreement you have with us.

**Attorneys' Fees.** To the extent not prohibited by law, you will pay all of our reasonable court costs and attorneys' fees in collections, foreclosures, and any other legal actions if you are in default. To the extent permitted by the United States Bankruptcy Code, you will also pay the reasonable attorneys' fees and costs we are charged to collect this debt as awarded by any court under the Bankruptcy Code.

**Change of Address.** We will send monthly periodic statements and other notices to you at the address shown for you in our files. You must send us written notice at least 15 days before the end of your monthly billing cycle if you want us to change your billing address. On a joint Account, we will send statements and notices to only one of you. You will notify us immediately in writing if you change your address.

**Annual Percentage Rate After Maturity.** The Annual Percentage Rate in effect on the final due date shown on page 1 in the section labeled "Your Promise to Pay" or the date we terminate your Account under the section on page 4 labeled "Possible Actions" will continue in effect until your Account is paid in full.

**Our Other Rights.** We can elect to not enforce or delay enforcement of our rights under this Agreement without losing them. For example, we may accept late payments from you without waiving our right to require that future payments be made on time. If we release any of you from this Agreement, the rest of you will not be released. If we exchange or release any collateral, real estate or other property that secures this Agreement, you will not be released. We do not have to use our legal remedies against one of you before we use our legal rememdies against any of you. If we accelerate and you fail to make a payment when due, then we may foreclose or take other action as provided in this Agreement, including the Security Agreement section or the Mortgage. If (1) you do not keep your promises and agreements made in this Agreement, including the Security Agreement section or the Mortgage, or (2) someone (you or anyone else) begins a legal proceeding that may significantly affect our rights in the collateral, real estate or other property ("Property") (such as, for example, a legal proceeding in bankruptcy, or to condemn the Property), then we may, but are not obligated to, take the necessary steps to protect the value of the Property and our rights in the Property. Our actions under this section may include, for example, paying any amount due under any prior mortgage, appearing in court, paying reasonable attorneys' fees, entering on the real estate to make repairs, paying taxes, or paying insurance. You promise to pay us all amounts that we pay under this section. If we pay an obligation, we will have all of the rights that the person we paid would have had against you, and the amounts will be added to your Account as a Loan Advance.

**Agreement Effective.** We have no obligation to make any Loan Advance under this Agreement and you agree not to use your Account until you no longer have the right to rescind this Agreement pursuant to the Federal Truth-in-Lending Act, and we are reasonably satisfied you have not rescinded.

**Cancellation and Restriction of Additional Extensions of Credit.** Any one of you can cancel your Account or restrict additional extensions of credit by notifying us in writing. If any one of you restricts additional extensions of credit, and any one of you wants to reinstate the Account, all of you are required to request we reinstate and allow additional extensions of credit. We can cancel your Account as allowed under the section labeled "Possible Actions" on page 4. If your Account is canceled, you will have to immediately pay us the full Account Balance amount you owe, including amounts which have not been billed to you yet. We do not have to pay any Check, authorize or pay any CommandLine Card transaction, or make a Loan Advance if your Account is canceled, but if we do, you promise to pay the amount paid, authorized, or advanced as soon as we ask you to.

**Severability.** If any provision of this Agreement is found to be unenforceable, all other provisions will remain in full force and effect.

**Changes and Waivers.** This Agreement cannot be changed unless we agree in writing. We may change the terms of this Agreement if: (1) you specifically agree to the change at the time in writing; (2) the change will unequivocally benefit you; (3) the change is insignificant; or (4) the Index Rate becomes unavailable. You agree to give up your rights to require us to: (1) demand payment of amounts due "presentment"; (2) obtain official certification of nonpayment "protest"; (3) notify you that amounts due have not been paid "notice of dishonor"; or (4) give you any other notice except as required in this Agreement.

**Governing Law.** You agree that this Agreement will be governed and interpreted by federal law applicable to national banks. Federal law governs all fees and charges, including interest, that relate to this Agreement. Under Section 85 of the National Bank Act, TCF refers to Illinois substantive law to determine the highest rate of interest permissible for any competing lender.

**Service of Process.** If a dispute arises and you file a lawsuit against us, service of process must be made on TCF at the following address: TCF National Bank, Legal Department, 800 Burr Ridge Parkway, Mail Code 380-05-O, Burr Ridge, IL 60527.

**Agreement Binding.** You understand that this Agreement is binding on your heirs and your legal representatives. This Agreement, the Arbitration Agreement and any mortgage are the final and complete expression of the agreement between you and us.

---

☐ If this box is checked, the following notice applies:

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

**CREDIT INFORMATION**

If at any time you feel that any information we may furnish to any consumer reporting agency is inaccurate, you can send us written notice of the inaccurate information to Customer Service, Mail Code 002-01-P, 101 E. 5th Street, Suite 101, St. Paul, MN 55101. Please include the account number(s), a description of the inaccurate information, and the nature of the inaccuracy of the information.

---

**COLLATERAL OWNER**

By signing below as collateral owner, you give us a security interest in the collateral securing this Agreement or a separate mortgage on real estate to protect us if the Borrower or Co-borrower defaults under this Agreement. If this Agreement is secured by collateral, you agree to the terms of the Security Agreement section of this Agreement. You will have no personal obligation to repay this Agreement, but you agree that we have all of the rights in the collateral or other property securing this Agreement as provided by this Agreement or if secured by real estate as provided in this Agreement and the mortgage. You also agree to the terms of the separate Arbitration Agreement dated the same date as this Agreement. By signing below, you acknowledge you received and agreed to the terms of the separate Arbitration Agreement dated the same date as this Agreement on this date.

_____   _____
Collateral Owner                               Collateral Owner

### NOTICE REGARDING USE OF CREDIT REPORT

If your Agreement is secured by your residence or other residential real estate, the interest rate and credit limit of this Agreement are based in whole or in part on information obtained from:

☐ TransUnion
2 Baldwin Place
P.O. Box 1000
Chester, PA 19022
(800) 888-4213

☒ Experian
701 Experian Parkway
PO Box 2002
Allen, TX 75013-0036
(888) 397-3742
www.experian.com/reportaccess

☐ Equifax
PO Box 105873
Atlanta, GA 30348
(800) 685-1111

You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons as to how we determined your interest rate or the credit limit of your loan. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

By initialing, you acknowledge receipt of this notice on __05/23/2005__ (date)

_____    _____
MICHAEL A MIETUS                     LINDA L MIETUS
Borrower                             Co-Borrower

---

### YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL**
If you think your bill is wrong, or if you need more information about a transaction on your bill write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.
In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including Finance Charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If we did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR COMMANDLINE ® CARD PURCHASES**
If you have a problem with the quality of property or services that you purchased with your CommandLine Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
  (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and
  (b) The purchase price must have been more than $50.
These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## TCF®COMMAND PROTECTION LINE PROVISION

If you elect to purchase the TCF Command Protection Line provision, these terms and conditions are included as part of the terms of your Agreement.

Accidental Death Waiver: For the monthly fee described on page 9, TCF will waive your indebtedness (up to $50,000) owing under the Agreement upon death resulting directly, and independently of all other causes, from an accident. An accident is an unplanned event, unexpected and undesigned, which occurs suddenly and at a definite place. The monthly fee will be added to the amount you owe as an Other Charge, not as a Loan Advance, and will be added to the amount of your scheduled monthly payment. The monthly fee will not be waived (it will be due) during any deferment period for the deferment events described below. You may obtain Loan Advances during any deferment period per the terms of the Agreement.

We agree to waive the entire remaining outstanding balance you owe to us under this Agreement as of the date of your accidental death, up to a maximum amount of $50,000 (this is the maximum waiver under this provision, even if you purchase a joint provision for both borrower and co-borrower), in the event of your accidental death subject to the limitations stated in this TCF Command Protection Line provision. The TCF Command Protection Line provision is also subject to the following exclusions:

- Death resulting from disease, sickness, bodily or mental infirmity, or medical or surgical treatment of same;
- Death resulting from suicide while sane or insane;
- Death resulting from intentionally self-inflicted bodily injury while sane or insane; or
- Death resulting from war or act of war, whether declared or undeclared.

Waiver means that the indebtedness is no longer due to TCF. No payments are made to you or any other party. You, your estate, or heirs may incur a federal, state and/or local income tax as a result of the waiver of indebtedness. Any waiver will be applied in the same manner described in the section on page 2 labeled "Application of Payment". You should consult your tax advisor.

Disability, Involuntary Unemployment, Family Leave and Military Leave Deferment: In addition, for no additional charge, TCF will defer (but not waive) scheduled monthly payments during periods of total disability,[1] involuntary unemployment[2], family leave[3] or military leave[4] ("deferment events") subject to the limitations below. Deferment means that once approved and during an approved period(s) of deferment, you do not need to make your scheduled monthly payment(s). The monthly fee for the TCF Command Protection Line provision will be added to your scheduled monthly payments and will not be waived (will be due) during deferment periods. **This is a payment deferral feature only-interest will continue to accrue according to this Agreement on the unpaid Principal Balance and the Principal Balance is not reduced.** Because of the deferral, you will have a larger remaining balance due on your scheduled final due date. On the scheduled final due date, you will be required to repay the outstanding balance in a single payment which will include all payments deferred. Deferrals will not cure any prior payment or other delinquency. If any prior delinquency is not cured, we will continue to pursue our remedies based on the prior delinquency and the total outstanding balance, including any payments which have been deferred, may be accelerated. If you pay off your loan before the scheduled final due date, and you have received a deferment of any monthly payment(s), your payoff balance will include the interest that accrued during the deferment period(s) and the remainder of your full unpaid Account Balance including your unpaid Principal Balance.

Here is an example of how the deferral works. Assume you draw $50,000 on your home equity line of credit, make only the Minimum Payment of the greater of $50 or interest only, and take no additional advances during the term of the home equity line of credit, you had a 15-year home equity line of credit at a 7% annual interest rate with an interest begin date of January 1, 2000, a first payment date of February 1, 2000, and a final scheduled payment date of January 1, 2015 and did not convert any part of the $50,000 to a Fixed Rate Conversion. If you were ill and could not work for five months beginning January 15, 2002, and a deferment period of 5 months was approved, your scheduled monthly payments for February, March, April, May and June would be deferred. Interest would continue to accrue on your Principal Balance and the Principal Balance of $50,000.00 would stay the same if you did not make any principal payments during the deferral. On January 1, 2015, the final scheduled due date, you would have to pay $1,438.36 in addition to the Principal Balance and the interest owed for the prior month to cover the total of the deferments (the total due would be $51,735.62).

**Conditions and Exclusions:** Normal pregnancy or self-inflicted injury is not a disability. You must be disabled at least 14 consecutive days to qualify for a disability deferment. You must be completely unemployed for at least 30 consecutive days (if you are employed part-time, you will not qualify) to qualify for a deferment for involuntary unemployment. You must not have been notified, either orally or in writing, of pending layoff, employment termination, strike or lockout prior to the date of this Agreement to qualify for a deferment for involuntary unemployment.

If you qualify for a deferment, you cannot qualify for another deferment for 90 days after the end of the prior deferment event. The maximum total number of months of deferments under this provision is 12 months for disability, 12 months for involuntary unemployment, 6 months for family leave and 6 months for military leave counting all periods of deferment that might occur during the term of this Agreement. The maximum total number of months of deferment during the term of this Agreement for all deferment events counting all periods of deferment that might occur during the term is 24 months.

[1] That is, you must be unable to perform the duties of your occupation for wage or profit because of sickness or accidental injury to qualify for disability deferment.
[2] Involuntary unemployment includes involuntary layoff, termination by employer, and inability to work as a result of a general strike or unionized labor dispute.
[3] Family leave is defined in the Federal Family and Medical Leave Act of 1993.
[4] Military leave is being called to active military duty after the date of this Agreement. If you are on active military duty on the date of this Agreement, military leave deferment is not available unless you leave active military duty and are called back to active military duty.

**If you have a preexisting condition** - we will not defer any payment with respect to any Loan Advance if you become disabled, and the disability occurs within six months after each Loan Advance and which is caused or substantially contributed to by an illness, injury or condition which required medical advice, diagnosis or treatment within six months prior to each Loan Advance.

You may initiate a waiver or deferment request by calling 800-445-8192 or such other number if we notify you in writing of a different number. Until your request is approved, you must continue to make any scheduled payments which are due. Scheduled payments prior to approval of your request will not be deferred. All deferments will be applied to scheduled payments after the date of our approval of your request. The number of monthly payments approved for deferment is determined by counting the number of full or partial months after the waiting period, if any, is met. Assuming all other requirements are met: for disability requests, a deferral of one monthly payment will be approved for periods of total disability continuing from 14 - 30 days; for Military Leave and Family and Medical Leave Deferments, a deferral of one monthly payment will be approved for a deferment event continuing from 1 - 30 days; and for all types of deferment events, a deferral of two monthly payments will be approved for deferment event periods continuing from 31 - 60 days, a deferral of three monthly payments will be approved for deferment event periods continuing from 61 - 90 days, and so forth (subject to the maximum number of monthly payments eligible for deferment by type and total described in the Conditions and Exclusions section above).

Notice of your request must be furnished within 180 days after death, disability, involuntary unemployment, family leave or military leave occurs, and you must return any forms and provide any information we request within 60 days of our request. We require written proof of accidental death (such as a certified copy of a death certificate). We require written proof of disability, involuntary unemployment, family leave or military leave for the entire period of the deferment event. We reserve the right to require you to give us proof of your continuing disability, involuntary unemployment, family leave or military leave at reasonable intervals in order to justify the continuance of the deferment. We will require information for each type of request you make.

Information we request from you will include, but is not limited to, the following: (A) If requesting accidental death waiver, we must be furnished with a certified copy of the death certificate; (B) If requesting deferment due to disability, you will be sent an information request form within 15 days after your notice is given (proof of disability must include: (1) the date and the cause of the total disability; and (2) signature of treating physician); (C) If requesting deferment due to a period of involuntary unemployment, you must qualify for unemployment benefits under state unemployment law and register to work with a state employment office or a recognized employment agency within fifteen (15) days after the last day employed and remain so registered during the request period if the unemployment occurred as a result of either layoff or employer termination (in the event registration occurs after the first fifteen (15) days of unemployment, you will not be eligible for payment deferment for the time in which you were not registered, but requests will be processed retroactively to the date of registration); (D) If requesting deferment due to family leave, we must be furnished with a copy of your employer's grant of family leave under the Federal Family and Medical Leave Act of 1993 (If your employer is not subject to the Federal Family and Medical Leave Act of 1993 we will require documentation from your employer similar to that required by the Act); and (E) If requesting deferment due to military leave, we must be furnished with a copy of your orders to active duty.

<u>Eligibility for Features (subject to the limitations in this TCF Command Protection Line provision):</u>

**If you are employed,** (30 hours or more a week and received a form W-2), you are eligible for all five features (accidental death waiver, involuntary unemployment deferment, disability deferment, family leave deferment and military leave deferment) on the date of your Agreement.

**If you are self-employed,** you are eligible for the accidental death waiver, and the disability, family leave and military leave deferment features, but not the involuntary unemployment deferment feature on the date of this Agreement. However, if you become employed (30 hours or more a week and receive a form W-2) at any time during the term of this Agreement, you become eligible for the involuntary unemployment deferment feature for a future period. You may then request to defer your monthly payment obligation for a future period of involuntary unemployment.

**If you are unemployed, disabled, or retired,** you are eligible for the accidental death waiver and military leave deferment features, but not the involuntary unemployment, disability, and family leave deferment features on the date of this Agreement. However, if you become employed (30 hours or more a week and receive a form W-2) at any time during the term of this Agreement, you become eligible for the involuntary unemployment, disability and family leave deferment features for a future period. You may then request to defer your scheduled monthly payment obligation for a future period of involuntary unemployment, for a future period of disability, or for a future period of family leave.

**Refinanced Agreement:** If the TCF Command Protection Line Provision is purchased as part of this Agreement, and this Agreement refinances an existing TCF loan agreement ("old loan") where a TCF Command Protection Line Provision or Debt Waiver Provision was purchased, then any deferment event which existed at the time of this Agreement ("preexisting event") will be eligible for deferment under this Agreement without regard to the limitations for prior deferments or preexisting conditions discussed in the Conditions and Exclusions section above. In addition, the total number of permitted monthly payments eligible for deferments for this Agreement by type and for purposes of the maximum total number of deferments for all deferment events are reduced by the number of monthly payments deferred for the preexisting event on the old loan.

**THE FOLLOWING TABLE SUMMARIZES THE ABOVE ELIGIBILITY REQUIREMENTS. THE 'X' REPRESENTS WHICH FEATURE(S) YOU ARE ELIGIBLE TO RECEIVE AT THE DATE OF THIS TCF COMMAND PROTECTION LINE PROVISION.**

|  | Accidental Death Waiver | Disability Feature | Involuntary Unemployment Feature | Family Leave Feature | Military Leave Feature |
|---|---|---|---|---|---|
| Fully Employed | X | X | X | X | X |
| Self Employed | X | X |  | X | X |
| Unemployed | X |  |  |  | X |
| Disabled | X |  |  |  | X |
| Retired | X |  |  |  | X |

MICHAEL A MIETUS

**Employment Status**
I have NOT been notified, either orally or in writing, of pending layoff, employment termination, strike or lockout and my employment status at the present time is:

| Borrower | Co-Borrower |
|---|---|
| ☐ Fully Employed | ☐ Fully Employed |
| ☐ Unemployed | ☐ Unemployed |
| ☐ Retired | ☐ Retired |
| ☐ Self-employed | ☐ Self-employed |
| ☐ Disabled | ☐ Disabled |

<u>IF YOU MISSTATE ANY OF THE ABOVE INFORMATION, TCF MAY NOT BE OBLIGATED UNDER THE TCF COMMAND PROTECTION LINE PROVISION.</u>
All statements by you for the TCF Command Protection Line provision have been made to the best of your knowledge and belief. After 2 years from the date of this Agreement, no statement made by you for the TCF Command Protection Line provision can be used to void the TCF Command Protection Line provision or to deny any accidental death waiver or payment deferral request unless that statement was made fraudulently. Prior to that time and at any time if a statement was fraudulently made by you, we may use the statements by you to void the TCF Command Protection Line provision or deny any accidental death waiver or payment deferral request.

---

**TCF COMMAND PROTECTION LINE PROVISION NOTICE**

THE TCF COMMAND PROTECTION LINE PROVISION IS NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST. ONLY THE BORROWER(S) SHOWN BELOW ARE INCLUDED.

BASED ON THE INFORMATION YOU HAVE PROVIDED TO US, UNLESS THE PROVISION IS CANCELED, THE MONTHLY FEE FOR THE TCF COMMAND PROTECTION LINE PROVISION IS $0.008219 PER $100 OF THE ACCOUNT BALANCE PER DAY FOR ACCOUNT BALANCES OF $10,000 OR MORE AND $0.001643 PER $100 OF THE ACCOUNT BALANCE PER DAY FOR ACCOUNT BALANCES OF LESS THAN $10,000 WITH A MAXIMUM TOTAL MONTHLY FEE OF $25 EACH MONTH OF THE TERM OF THIS AGREEMENT FOR THE BORROWER ($0.011506 PER $100 OF THE ACCOUNT BALANCE PER DAY FOR ACCOUNT BALANCES OF $10,000 OR MORE AND $0.002301 PER $100 OF ACCOUNT BALANCE PER DAY FOR ACCOUNT BALANCES OF LESS THAN $10,000 WITH A MAXIMUM TOTAL MONTHLY FEE OF $35 EACH MONTH OF THE TERM OF THIS AGREEMENT IF YOU ARE PURCHASING A JOINT PROVISION FOR THE BORROWER AND CO-BORROWER). THE TOTAL MONTHLY FEE IS CALCULATED BY ADDING EACH OF THE DAILY AMOUNTS FOR ALL DAYS OF THE MONTH. THE TOTAL MONTHLY FEE WILL BE ADDED TO THE AMOUNT YOU OWE AND YOUR MONTHLY PAYMENT AS AN OTHER CHARGE AND NOT AS A LOAN ADVANCE.

☐ I/We want the TCF Command Protection Line provision for Borrower only.
☒ I/We want the TCF Command Protection Line provision for both Borrower and Co-Borrower.
☐ I/We decline the TCF Command Protection Line provision.

**AMOUNT OF ACCIDENTAL DEATH WAIVER:** The amount of the accidental death waiver may be less than the amount you owe under your Agreement. You understand that we will waive only up to a maximum of $50,000 in the event of borrower's (or co-borrower's if applicable) accidental death. If your Account Balance exceeds the amount subject to waiver stated above, the excess will still be due in the event of your accidental death. ☒You understand that your Credit Limit exceeds this maximum amount. This means that you (or your estate) may owe a balance on this Agreement even after the death waiver is applied to your Account Balance.
**CANCELLATION/TERMINATION:** You may cancel the TCF Command Protection Line provision at any time. We may cancel the TCF Command Protection Line provision if your Agreement becomes 150 days delinquent or we charge off your Agreement.
**DEFERRAL FEATURES:** You understand that the disability, involuntary unemployment, family leave and military leave features are deferrals and not waivers. You understand that you will still have to pay the payments deferred, that interest continues to accrue during the deferral period(s), that your term will not be increased by the corresponding length of deferral(s), and that no principal is reduced by the deferral(s). This means that your final payment will be increased by the payments deferred. You understand that the TCF Command Protection Line provision only allows 12 total months of deferment for disability, 12 total months of deferment for involuntary unemployment, 6 total months of deferment for family leave and 6 total months of deferment for military leave during the term of this Agreement. The 12-month and 6-month limits include all periods of deferment that occur during the term of this Agreement. In addition, you understand the TCF Command Protection Line provision only allows a total of 24 months of deferment for all deferment events.
**REFUND:** You understand that the monthly fee is billed at the end of each period to which it applies (in arrears). If you prepay your Agreement, a fee will be charged for the days elapsed from the last scheduled payment due date to the date of prepayment, but no fee will be charged for days after the date of prepayment. Therefore, no portion of the fee will be refunded in the event you prepay the Agreement in full because no portion of the fee for the TCF Command Protection Line provision is unearned.
**ELECTION:** By signing below, you state that you **DO** want the TCF Command Protection Line provision for the borrower(s) indicated by the box checked above. You also state that you have received a filled-in copy of this form before signing it. You also state that you understand you, your estate, or heirs may incur a federal, state and/or local income tax as a result of the waiver of the indebtedness and that you should consult your tax advisor.

_[signature]_  5/23/05    _[signature]_  5-23-05
Borrower MICHAEL A MIETUS    Date    Co-Borrower LINDA L MIETUS    Date

By signing below, you state that you **DO NOT** want the TCF Command Protection Line provision.

_____    _____    _____    _____
Borrower    Date    Co-Borrower    Date

092060    Page 9 of 9    12/04